UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DERRICK D. WILLIAMS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of the ) <br> Social Security Administration. ) <br> ) <br> Defendant. ) | Case No. C10-989-BAT <br><br> **ORDER** |

Derrick D. Williams seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Dkt. 3. He contends the ALJ incorrectly assessed the medical evidence, Mr. Williams' credibility and his functional limitations. Dkt. 14. As discussed below the Court orders the case be **REVERSED** and **REMANDED** for further administrative proceedings.

### I.     FACTUAL AND PROCEDURAL HISTORY

Mr. Williams is currently 35 years old, has a high school education, and has worked with computers in technical support.[1] He applied for SSI and DIB, in February 2005 and July 2005 respectively. Tr. 13. His application was denied initially and on reconsideration. Tr. 13, 44, 384. The ALJ conducted a hearing on September 12, 2007, and issued a decision on January 8,

---

[1] Tr. 52, 107, 191

ORDER- 1

2008 finding Mr. Williams not disabled. Tr. 10. The Appeals Council denied Mr. Williams' request for review, making the ALJ's decision the final decision of the commissioner. Tr. 5.

## II.   DISCUSSION

### A.   The ALJ's Residual Functional Capacity Assessment

Mr. Williams argues the ALJ incorrectly found he has the mental RFC to perform detailed, but not complex tasks in a non-public setting, with limited interaction with co-workers and limited supervision. The argument rests on the premise the ALJ improperly discounted the treatment records from Therapeutic Health Services (THS), opinions of certain examining doctors, and the opinion of Dr. Allen Bostwick who testified at the hearing, and incorrectly gave great weight to the opinions[2] of Gerald Peterson, Ph.D. an examining doctor and Alex Fisher, Ph.D. a reviewing doctor and. Tr. 19. Dkt. 14 at 9-12.

### 1.   THS Medical Records

Mr. Williams was treated by THS staff between May 2003 and August 2004. Tr. 198-283. He argues because THS's staff diagnosed him with social phobia, agoraphobia, and the inability to undertake social interactions, he is disabled. Dkt. 14 at 11. The Court disagrees. These diagnoses are consistent with the ALJ's step-two finding that Mr. Williams has anxiety disorder, social phobia, history of panic with agoraphobia, and poly-substance abuse in uncertain remission. But THS's treatment records contain no opinions about the impact these conditions have on Mr. Williams' ability to work or function in the work place.

Mr. Williams also argues the ALJ incorrectly discounted the GAF scores assigned by THS. Dkt. 12-13. The Ninth Circuit has "made it clear that the medical opinions of a claimant's treating physicians are entitled to special weight and that, if the ALJ chooses to disregard them,

---

[2] Dr. Fisher stated he reviewed the medical record and agreed with Dr. Peterson's assessment.

ORDER- 2

'he must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.'" *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

THS assigned GAF scores on four different days, ranging from 40 to 50— the "serious symptoms" range.[3] GAF scores are relevant and should be considered. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ can discount GAF scores where the ALJ gives specific, legitimate reasons such as findings of other physicians that contradict the scores. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The ALJ first rejected the scores finding they were based on "the claimant's subjective reporting." THS treated Mr. Williams for mental illness. There is nothing showing THS's staff failed to exercise professional clinical judgment in assigning GAF scores. Additionally, there is nothing showing THS's staff believed Mr. Williams was malingering, making things up or exaggerating his symptoms.

Second, the ALJ rejected the scores because THS records showed Mr. Williams "reported improving symptoms" in 2004. Tr. 22. The THS records show Mr. Williams' symptoms going up and down. At times he would report his medications helped and he felt better. But toward the end of his treatment, THS noted that he was "sleeping a lot," he was a "little down," and that his hygiene was not good; all indications Mr. Williams was not out of the woods. Tr. 198, 201, 202. Accordingly, the Court concludes the ALJ erred in discounting the GAF scores assigned by THS.

### 2. Dr. Rodger Meinz, Ph.D.

Dr. Meinz provided three evaluations of Mr. Williams and assigned GAF scores of 35 and 45. Dr. Meinz opined Mr. Williams' social phobia and panic attacks would prevent him

---

[3] *See* DSM-IV

ORDER- 3

from being able deal with work stresses or cope with social factors at work.  Tr. 193, 375.  The ALJ rejected Dr. Meinz's assessment on the grounds it "rests primarily on the claimant's subjective reporting."  Tr. 21.  An ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations.  *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001).  Dr. Meinz, did not discredit Mr. Williams, and thus the ALJ has not provided adequate grounds to reject Dr. Meinz's opinions.

### *3. Dr. John Kooiker, M.D.*

Dr. Kooiker performed a psychiatric evaluation of Mr. Williams and assigned a GAF score of 40-50.  He opined Mr. Williams' sustained concentration and persistence is impaired, that his social interaction is seriously impaired, and that he is unable to make adaptations.  Tr. 289.  The ALJ accepted the doctor's opinion that Mr. Williams memory and cognitive functioning is intact but rejected the rest of his opinions.  Tr. 21.  The rejection was based on the grounds the doctor "may" have relied on Mr. Williams' "subjective reporting."  There is nothing showing Dr. Kooiker disbelieved or discredited Mr. Williams' complaints.  Hence, this is not a proper ground to reject the opinion.

The ALJ also stated Dr. Kookier did not clarify the extent to which he found Mr. Williams' concentration and social interaction impaired.  Tr. 21.  The Court rejects this rationale.  The ALJ must develop the record to resolve ambiguity.  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  *McLeod v.*

ORDER- 4

*Astrue*, 627 F.3d 1170, 1174 (9th Cir. 2010).  Here, the ALJ noted Dr. Kookier's opinion was not clear and hence should have developed the record further.

### 4. Mike Lee, Psy.D.

Dr. Lee is a licensed psychologist who evaluated Mr. Williams.  Tr. 368.  The ALJ discounted Dr. Lee's evaluation because it did not contain a "functional assessment apart from a GAF score of 55." Tr. 21.  Dr. Lee found Mr. Williams suffering from panic disorder, social phobia, schizoaffective disorder, and depression.  His evaluation does not discuss the impact of these disorders on Mr. Williams' ability to work.  However, as discussed above, GAF scores are relevant and should be considered.  The ALJ failed to give a specific, legitimate reason to reject the score such as other medical evidence.  Thus, even though the ALJ found Dr. Lee's other findings unhelpful, he erred by disregarding the GAF score without discussion.

### 5. Dr. Gerald Peterson Ph.D. and Dr. Alex Fisher Ph.D.

Dr. Peterson evaluated Mr. Williams and opined he had limitations pertaining to social interactions, and that his anxiety symptoms would make it difficult to perform a job in which interactions with others is constant.  Tr. 144.  However, the doctor opined that because Mr. Williams "utilizes public transportation, has no problems getting along with others, including authority figures, and cooperated with the interview" that he was capable to work in a job with "limited contact with others." *Id.*  Dr. Fisher reviewed the medical record and agreed with Dr. Peterson.

That Mr. Williams takes public transportation shows he can be around other people in a bus.  It does not show he can work with limited contact with others.  Likewise, his good behavior during the doctor's interview and with authority figures might show Mr. Williams' is not oppositional or defiant, but does not show whether he can work with others.  The Court

ORDER- 5

concludes the ALJ erred in relying on Dr. Peterson's opinions in assessing Mr. Williams' functional limitations. This was not harmless. The ALJ found the doctor's opinions were consistent with the ALJ's RFC determination. The ALJ also used Dr. Peterson's functional capacity assessment as the basis of a hypothetical question he asked the vocational expert at the hearing. Based on this hypothetical, vocational expert testified Mr. Williams could perform work as a small parts assembler or night cleaner. TR. 445-46. Hence, the ALJ's determination that Mr. Williams' can perform work rests largely on Dr. Peterson's opinions.

### 5. *Dr. Allen Bostwick, Ph.D.*

Dr. Bostwick opined Mr. Williams' anxiety met or might meet Listing 12.06 and that Mr. Williams cannot work. The ALJ rejected Dr. Bostwick's opinion on the grounds it relied on evaluations prepared by Dr. Meinz and Dr. Lee—evaluations which the ALJ gave little weight. As discussed above, the ALJ erred in giving Dr. Meniz's and Dr. Lee's reports little weight. As such, the ALJ erred in rejecting Dr. Bostwick's opinions.

### 6. *Mr. Williams' Credibility*

The ALJ did not find Mr. Williams was malingering. The ALJ may thus reject his testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).

The ALJ rejected Mr. Williams' testimony for four reasons. First, that there was no objective medical evidence to support his claimed limitations. Tr. 16-23; *see also* Dkt. 19 at 7. The lack of objective medical evidence cannot be the sole reason an ALJ discounts subjective complaints especially when a claimant suffers from mental illness not subject to a lab test, x-ray or other "objective" test. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Second, that Mr. Williams' treatment history was spotty. Tr. 19; *see also* Dkt. 19 at 7.

ORDER- 6

This is not an adequate ground.  Unexplained failure to seek treatment is a clear and convincing reason to question a claimant's credibility.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  But, there is not enough in the record for the Court to equate spotty treatment with unexplained failure to treat.  If Mr. Williams did not seek treatment because he lacked medical insurance, that would not support an adverse credibility determination.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Hence, without more information, Mr. Williams' "spotty" treatment history is not a basis to discount Mr. Williams' credibility.

Third, that Mr. Williams' testimony is inconsistent with Dr. Kooiker's findings and Dr. Lee's GAF assessment.  The record does not support this.  The ALJ reached these conclusions by crediting some of Dr. Kooiker's findings and discounting other opinions.  For instance, Dr. Kooiker opined Mr. Williams social interaction is seriously impaired, which is consistent with Mr. Williams' testimony.  As to Dr. Lee's findings, the ALJ rejected them and did not indicate he was relying on them to discount Mr. Williams' testimony.  The Commissioner's argument[4] that Dr. Lee's GAF score is grounds to reject Mr. Williams' testimony is therefore an improper post-hoc rationalization that this Court cannot rely on.  *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

And fourth, that Mr. Williams' testimony is inconsistent with the opinions of Dr. Gerald Peterson Ph.D. and Dr. Alex Fisher Ph.D.  Dr. Peterson opined Mr. Williams had limitations pertaining to social interactions, and that his anxiety symptoms would make it difficult to perform a job in which interactions with others.  Tr. 144.  However, as discussed above, the doctor's opinions that Mr. Williams can work appears to rest on Mr. Williams' ability to take public transportation—activities that do not establish whether Mr. Williams can work in a job

---

[4] Dkt. 19 at 8.

ORDER- 7

with limited contact with others.

### III.  CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings.  On remand, the ALJ should:  (1) reevaluate and further develop, as necessary, the medical evidence in the record; (2) reevaluate the medical opinions in the record, including the GAF scores, (3) reevaluate Mr. Williams' testimony and credibility, (4) reevaluate Mr. Williams' RFC; and (6) reassess steps four and five of the sequential evaluation process with the assistance of a vocational expert if deemed appropriate.

DATED this 2nd day of February, 2011.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER- 8